# SETTLEMENT AGREEMENT

This agreement made this 8th day of December, 2016, by and among the **Municipal Review Committee, Inc.** [the "MRC"], a Maine corporation with a place of business in Ellsworth, Hancock County, Maine, **USA Energy Group, LLC** ["USAE"], a Minnesota limited liability company with a place of business in Minneapolis, Hennepin County, Minnesota, **PERC Holdings, LLC**, a Minnesota limited liability company with a place of business in Eden Prairie, Hennepin County, Minnesota, and **Penobscot Energy Recovery Company, Limited Partnership** ["PERC"], a Maine limited partnership with a place of business in Orrington, Penobscot County, Maine [collectively, "the Parties"].

WHEREAS, the Parties are engaged in pending litigation in the Business and Consumer Court in a matter titled *Municipal Review Committee, Inc., et al. v. USA Energy Group, LLC*, Docket No. BCD-CV-15-22 [the "Primary Litigation"]; and

WHEREAS, the Parties also have an interest in pending litigation in the Kennebec County Superior Court in a matter titled *Penobscot Energy Recovery Company, LP, et al. v. Maine Department of Environmental Protection,* Docket No. AP-2016-52 [the "Rule 80C Appeal"]; and

WHEREAS, the Parties are signatories to and/or beneficiaries of a certain agreement titled *Fifth Amended and Restated Agreement of Limited Partnership of Penobscot Energy Recovery Company, Limited Partnership* dated July 18, 2011 [the "Fifth Amended Partnership Agreement"]; and

WHEREAS, the Parties wish to resolve all pending issues in the Primary Litigation and to allow the Rule 80C Appeal to be resolved in the ordinary course through the court system; and

WHEREAS, the Parties wish to modify and simplify their working relationship by amending and restating the Fifth Amended Partnership Agreement.

NOW, THEREFORE, in consideration of the mutual commitments and undertakings more fully described below, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree as follows.

1. <u>Partnership Agreement</u>. All parties to the Fifth Amended Partnership Agreement hereby agree to adopt the Sixth Amended and Restated Agreement of Limited Partnership of Penobscot Energy Recovery Company, Limited Partnership, appended hereto as *Exhibit A* (the "Sixth Amended Partnership Agreement").

2. <u>Joint Communiqué</u>. At the earliest practicable date following the execution of this agreement, the MRC and USAE shall prepare a joint communiqué to all municipalities with a contractual or ownership interest in PERC, explaining the elements of the agreement as they pertain to municipal interests, indicating that the MRC and USAE have resolved their legal differences with the exception of the pending Rule 80C Appeal, stating that they have negotiated a positive conclusion to their partnership arrangement at PERC, and that they have agreed to a guarantee from USAE of payments from PERC of Performance Credits and Net Cash Flow (as those terms are defined in the Sixth Amended Partnership Agreement) that will be made to the MRC as agent for its members through March 31, 2018. The joint communiqué shall expressly provide that the guaranteed payments are not intended to be reimbursement for any lobbying expenses incurred by USAE and shall encourage the Equity Charter Municipalities to relinquish their membership interests in the PERC Partnership as described in the Sixth Amended Partnership Agreement.

3. <u>Joint Meeting</u>. Subsequent to the release of the joint communiqué, the MRC and USAE shall hold a joint public meeting to explain to the affected municipalities the elements of the agreement as they pertain to municipal interests.

4. <u>Existing Delivery Contracts</u>. The MRC shall use all reasonable means to encourage municipalities to comply with their existing waste disposal agreements with PERC from the date of execution of this agreement through March 31, 2018. Such efforts shall not preclude the MRC from negotiating with municipalities or any other entity or source within Maine concerning the delivery of solid waste following the expiration of the current delivery contracts, subject only to the non-disparagement clause set forth below.

5. <u>Non-disparagement</u>. In the context of the joint communiqué and in all other communications, actions, and undertakings from the date of execution of this agreement going forward, no party, or any legally or contractually related entity of any party, shall by either words or conduct disparage, or suffer or permit the disparagement of, any other

{EP - 02324450 - v1}

2

party's efforts to provide or procure municipal solid waste disposal services, now or in the future. This prohibition against disparagement shall not extend to the Parties' on-going efforts in relation to the Rule 80C Appeal, nor shall it be interpreted as inhibiting, limiting, or adversely affecting the ability of the Parties to prosecute or defend their legal and factual positions in relation to the Rule 80C Appeal. The Parties further expressly acknowledge on-going recruitment efforts with respect to municipal solid waste disposal generated from any source, including municipalities, in Maine. This agreement is not intended to delay, frustrate, or impede those efforts, so long as they do not include disparagement of or interference with the other party or the other party's design or implementation efforts, outside the context of the Rule 80C Appeal. This agreement does not preclude efforts to enforce the terms of the Sixth Amended Partnership Agreement or the terms of this agreement. Nor does it preclude discussion of compliance with this agreement, the Second Amended, Restated, and Extended Waste Disposal Agreements, or the Sixth Amended Partnership Agreement, or normal discussion of partnership issues including management of PERC, review of tip fee calculations and compliance with performance standards, as contemplated by the waste disposal agreements and the Sixth Amended Partnership Agreement. The Parties shall modify, to the extent necessary, and maintain all media to comply with this provision of the agreement.

6. **Guaranteed Payments.** The MRC's share, managed for the benefit of its member communities, of Performance Credits and Net Cash Flow payments shall be at the guaranteed amount of Five Million Four Hundred Thousand Dollars ($5,400,000) beginning on September 1, 2016, and extending through March 31, 2018, to be paid as part of the monthly "waterfall payments" in accordance with the current Surplus Cash Agreement and the Partnership Agreement, with any remaining balance due to be paid no later than March 31, 2018. If there is cash flow in the aggregate in excess of the guaranteed amounts, the MRC, on its own behalf and on behalf of the municipal limited partners of PERC, shall not participate in the excess.

7. **Consent Payment.** In addition to the foregoing, USAE shall, contemporaneously with the execution of this agreement, pay or cause to be paid the sum of Six Hundred Thousand ($600,000.00) in cash to the MRC (the "Consent Payment"). This Consent Payment is being made to the MRC because the MRC has consented to the following: (a) the removal of the "2018 Purchase Option" as detailed in Section 9.3 of the Fifth Amended and Restated Agreement of Limited Partnership; and (b) the addition of the Equity Charter Put Option as detailed in the new Section 9.3 of the Sixth Amended Partnership Agreement; and (c) the addition of the Partnership Call Option as detailed in the new Section 9.4 of the Sixth Amended Partnership Agreement; and (d) the Termination of the Charter Municipality Purchase Option as detailed in the new Section 9.5 of the Sixth Amended Partnership Agreement. Furthermore, both USAE and the MRC acknowledge and agree that the Consent Payment does not relate, in any way, to the dismissal of the Primary Litigation.

8. **GAT Penalties.** USAE hereby relinquishes any claim to guaranteed annual tonnage ["GAT"] penalties accrued but not yet invoiced, and no further GAT penalties will be charged through March 31, 2018, or thereafter.

9. <u>Cash Reserve Withdrawal</u>. USAE will provide assistance to the MRC in withdrawing up to One Million Three Hundred Thirty-Three Thousand, Three Hundred Thirty-Three and Thirty-Three One-Hundredths Dollars ($1,333,333.33) from the TD Bank cash reserve account immediately upon execution of this agreement, and shall continue to provide such further assistance in relation to that withdrawal as the MRC may reasonably require.

10. <u>Primary Litigation</u>. The Parties shall stipulate to a dismissal of the Primary Litigation, with prejudice and without costs to any party.

11. <u>Emera Maine</u>. As partial consideration for this agreement, USAE represents and the MRC accepts USAE's representation, that the interests of Emera Maine will not be adversely affected by any provision of this agreement.

12. <u>PERC Holdings</u>. As partial consideration for this agreement, USAE represents and the MRC accepts USAE's representation, that PERC Holdings, LLC, has reviewed and approved the elements of this agreement.

13. <u>MRC Authority</u>. As partial consideration for this agreement, the MRC represents and USAE accepts the MRC's representation that the MRC has the necessary authority to negotiate and enter into this agreement on its own behalf and on behalf of the municipal limited partners of PERC. The MRC shall defend and indemnify USAE and/or PERC Holdings in the event the MRC's authority is legally challenged through an action against USAE, PERC Holdings, or PERC.

14. <u>MRC Board Approval</u>. It is expressly understood that this agreement is subject to and contingent upon approval by the MRC Board of Directors, which approval shall not be unreasonably withheld. If the MRC Board of Directors does not approve this Agreement the payment of Six Hundred Thousand Dollars ($600,000) as described in Section 7 above shall be promptly returned to PERC.

[Signatures on next page]